WILLIAM G. WOHNER and BONNIE J. WOHNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. MARLIN K. KITTLE and MYRTLE J. KITTLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Wohner v. Commissioner
Docket Nos. 5498-71, 6154-71.
United States Tax Court
T.C. Memo 1972-237; 1972 Tax Ct. Memo LEXIS 20; 31 T.C.M. (CCH) 1166; T.C.M. (RIA) 72237; November 28, 1972, Filed Gilbert Hale Nutt, for the petitioners in docket No. 5498-71. Marlin K. Kittle, pro se. Philip G. *21 Owens, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined a deficiency in the 1968 income tax of petitioners William G. Wohner and Bonnie J. Wohner in the amount of $347.60. Respondent also determined a deficiency in the 1968 income tax of Marlin K. Kittle and Myrtle J. Kittle in the amount of $330.07. These two cases were consolidated on a joint motion by all of the parties because of their common questions. The question we decide is whether the Wohners or the Kittles are entitled to three dependency exemption deductions. FINDINGS OF FACT Some of the facts have been stipulated and the stipulations of facts, together with the exhibits attached thereto, are incorporated by reference. Petitioners William G. and Bonnie J. Wohner were, during the taxable year involved, husband and wife. They filed a joint income tax return for the year 1968 with the district director of internal revenue, Louisville, Kentucky. They kept their records and prepared their income tax return on the cash basis of accounting. At the time their petition in this proceeding was filed, the Wohners resided in Pewee Valley, Kentucky. Petitioners *22 Marlin K. and Myrtle J. Kittle were also, during 1968, husband and wife. They filed a joint income tax return for the year 1968 with the district director of internal revenue, Louisville, Kentucky. They kept their records and prepared their income tax return on the cash basis of accounting. At the time their petition was filed, the Kittles resided in Louisville, Kentucky. Prior to 1962, William Wohner and Myrtle Kittle had been married. While married, they had three children: Annette, James, and Ester. The couple divorced in 1962. Under the terms of the divorce decree, Myrtle received custody of the children. The decree, however, was silent as to who was entitled to the dependency exemptions. During 1968, the three children lived with the Kittles. On December 31, 1968, the ages of Annette, James, and Ester were 10, 8, and 7, respectively. Pursuant to the terms of the divorce agreement, William Wohner was required to make child support payments of $30 per week to the Jefferson County Juvenile Court. During 1968, Wohner paid $1,410 to the juvenile court for support of the children. Also, he paid Blue Cross and Blue Shield medical insurance premiums of $40.28 per child during *23 that year. During the taxable year, Annette spent three weeks in the home of William Wohner's mother. Wohner gave his mother $30 with which to buy clothes for Annette. Marlin and Myrtle Kittle submitted Form 2038, [1] dated March 27, 1970, to the district director's office. In Form 2038, the Kittles allege that the support for the children for 1968 was as follows: Ester
Annette
James
Food & Lodging
$ 936
$ 936
$ 936
Clothing
400
350
400
Education 105
105
105
Total support
$1,441
$1,391
$1,441
Furnished by others 470
470
470
Furnished by tax- payers
* $1,071
$ 921
* $1,071
The funds available to the Kittles in 1968 consisted only of Marlin's income and the support payments received from the Wohners. Myrtle Kittle had no income, and the couple obtained no loans, used no savings, or otherwise acquired any money. Both petitioners William and Bonnie Wohner and petitioners Marlin and Myrtle Kittle claimed the same three children *24 as dependents on their respective 1968 income tax returns. Respondent denied dependency exemption deductions for the three children to both the Wohners and the Kittles. OPINION The only question presented is whether the Wohners or the Kittles are entitled to the three dependency exemption deductions. Section 152(e) [2] provides that in the case of a child of divorced parents, the parent having custody of the child is, in general, entitled to the dependency exemption. There are two statutory exceptions to the general rule, and the one which pertains to this case is section 152(e)(2)(B), which provides that the parent not having custody shall be entitled to the exemption if: *25 The requirements of section 152(e)(1) are met in this case. The Wohners have established that they provided more than $1,200 for the support of the three children. Thus the Wohners are entitled to the dependency exemptions unless the Kittles "clearly establish" that they provided more for the support of the children than did the Wohners. In , affd. (C.A. 5, 1971), we construed "clearly establish" as requiring the custodial parent to show by a clear preponderance of the evidence that he provided a greater amount of support than the noncustodial parent. A clear preponderance means something positive and explicit as opposed to ambiguous and equivocal. Id. The evidence produced by the Wohners to establish that they had provided more than $1,200 for the support of the children in 1968 was precise and credible. William Wohner submitted photostatic copies of cancelled checks in the amount of $1,410 paid to juvenile court during 1968 for support of the children. In addition, the Blue Cross and Blue Shield Company verified that medical insurance premiums of $40.28 per child for 1968 had been paid. We find credible *26 the Wohners' testimony that they paid William Wohner's mother $30 to buy clothes for Annette during the child's visit with her grandmother. Thus we find that during 1968, the Wohners provided support for Annette, James, and Ester in the respective amounts of $540.28, $510.28, and $510.28. In contrast to our view of the evidence produced by the Wohners, we find the evidence presented by the Kittles to be vague, ambiguous, and confusing. In Form 2038, submitted by the Kittles to the district director's office, the contribution of the Wohners was understated in that the medical insurance payments were not considered. Also, we conclude that the alleged contribution by the Kittles was overstated. While the information contained in the form is not determinative in this proceeding, it is entitled to some weight. And we believe that it is coincident with the inaccurate testimony presented by the Kittles at trial. In testifying to their total household expenses and to the specific expenditures for the children, the Kittles could offer only estimates. They produced no documents or records tending to support those estimates. In some instances their estimates consisted merely of a wide range *27 of possible expenditures. While this Court has always been mindful of the difficulty of precisely establishing the amount of support, the vague estimations offered by the Kittles exceed the permissible tolerance. In evaluating the testimony of the Kittles, we have compared their claimed expenditures with the funds available to the family. Only Marlin Kittle had an income, and his salary was $5,735. From this salary was withheld $436 in Federal income taxes, $121.91 in state and local income taxes, and approximately $252.34 in Social Security payments. This left an amount of $4,924.75. When the $1,410 in support payments is added, the Kittles had $6,334.75 in disposable money. As previously found, the Kittles had no other source of funds. According to the testimony of the Kittles, the following expenditures were made: [3] $1,104 for rent, $418 for utilities, $2,860 for food, $480 for car payments, $250 for clothes for Myrtle Kittle, $572 for Marlin Kittle's commuting expenses, $200 for teeth (dentures) for Myrtle Kittle, approximately $400 in payments on a Chapter XIII Wage Earner's Plan, $315 for the children's educational expenses, and $1,150 for clothes for the children. In addition, *28 the Kittles' 1968 income tax return indicates expenditures of $100 for medical insurance, $50 for drugs, and $25 for charity. The total of the alleged expenditures is $7,924. Thus even without considering entertainment expense or possible payments for such items as car or life insurance, the Kittles' claimed expenditures exceed their available funds by $1,589.25. We are constrained to conclude that the Kittles' estimates are inaccurate and inflated. These chimerical estimates are not entitled to much weight. Certainly they do not approach a showing by a clear preponderance of the evidence that the Kittles have provided most of the support for the children. In view of the economic realities, we believe that the Kittles spent no more than $1,104 for rent, $380 for utilities, $2,340 for food, $255 for the children's education, and $300 for the children's clothes. Even allocating one-fifth of the household expenditures to each child, dividing the particular expenses for the children evenly, and including the $40.28 medical insurance premium, the Kittles utilized no more than *29 $990.08 in total support for each child. Since we have found that the Wohners contributed $540.28, $510.28, and $510.28 of the total support for Annette, James, and Ester, respectively, the Kittles have not clearly established that they provided more for the support of the children than did the Wohners. Accordingly, the Wohners are entitled to the three dependency exemption deductions for 1968. Decision will be entered for the petitioners in docket No. 5498-71. Decision will be entered for the respondent in docket No. 6154-71. Footnotes
1. Department of the Treasury - Internal Revenue Service Form 2038, Information to Support Exemption Claimed for Dependent on Federal Income Tax Return. ↩
*. Note error - amount should be $971.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended. Section 152(e) provides, in part: (e) Support Test in Case of Child of Divorced Parents, Et Cetera.-- (1) General rule.--If-- (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody). (2) Special rule.--The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if-- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and (ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or (B)(i)the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support. (B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.↩
3. Where the estimate consisted only of a possible range of expenditure, we have used a median figure.↩